## Allen v. Posternock, Appellant.

Argued October 3, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Raymond A. White, Jr.,* and with him *Maurice W. Sloan* of *Sloan, White & Sloan,* for appellant.

*John V. McDonald,* and with him *William F. Starsinic,* for appellee.

OPINION BY STADTFELD, J., December 16, 1932:

This was an action in trespass for the recovery of damages for personal injuries sustained by plaintiff as a result of the alleged negligence of defendant's servant. Yetta Posternock, defendant, conducted and operated a beauty parlor in the City of Philadelphia, for the beautification, cutting, waving and general treatment of the hair. She had in her employ one Charles Gibson to administer the necessary treatment. On June 1, 1929, plaintiff was in defendant's shop, obtaining what is known as a "permanent wave." Gibson was in charge of the treatment. The apparatus used was placed on her head before one o'clock P. M., and at about four o'clock the tubes were taken off, leaving the bars around which her hair was wrapped, and also the cotton which had been placed upon her head and forehead to protect her scalp. At this time Gibson took a cigarette and after lighting it, waved the match back and forth to put it out, coming in contact with the cotton on plaintiff's head and enveloping her head in flames. Gibson tried to put the flames out with a towel and that not proving successful he took her to the sink and put the flames out by the application of water. Plaintiff's face and right hand were burned, and she was confined to the house for several weeks during the period of treatment. No permament injuries were sustained. Defendant claimed that she had given instructions to Gibson, prior to this accident, not to smoke. It was claimed by defendant and by Gibson that the plaintiff had asked the latter for a cigarette and he gave her one but told her

he had instructions not to smoke; that plaintiff told him nevertheless to go ahead and smoke. This, however, was denied by plaintiff. Defendant was in the room when the accident occurred and claims to have seen Gibson light a cigarette for plaintiff and one for himself, but said nothing to Gibson before he lit the cigarettes. Request for binding instructions was refused.

The case was submitted to the jury by the court, BROWN, JR., J., with instructions to determine whether Gibson, at the time of the occurrence, was acting within the scope of his employment. The jury found in favor of plaintiff in the sum of $1,200 which was cut down by the court and a remittitur filed for all in excess of $600, and judgment entered on the verdict as reduced. From the order of the court refusing to enter judgment in favor of defendant, n. o. v., this appeal is taken.

Appellant contends that Gibson, the employee of defendant, at the time of the occurrence was not acting within the scope of his employment; that he was an experienced operator and had been supplied with proper equipment for the performance of his work and had been given specific instructions by defendant not to smoke.

There was no evidence of a wilful or intentional trespass in this case, and the sole question is whether the admitted negligence or carelessness of Gibson was such as to make defendant answerable to plaintiff for his acts.

It is admitted that Gibson placed the cotton pad on plaintiff's head as a necessary step in the administration of the treatment he was giving and that this cotton was inflammable. It was his duty to use due care in the performance of his duties, as also to refrain from doing anything in conjunction with this hazard likely to result in injury to the plaintiff. Defendant

was present, and according to her own statement saw Gibson light a cigarette for plaintiff and one for himself, yet said nothing to the latter to cause him to desist. The rule governing the liability of the master for the act of his servant is stated in 39 Corpus Juris, Sec. 1471, as follows: "The liability of a master to a third person for injuries inflicted by a servant in the course of his employment and within the scope of his authority is purely of a secondary character; and is founded on the power of control and superintendence over the servant which the master has the right to exercise, and the duty imposed on him in the management of his own affairs whether by agents or servants to conduct them so as not to injure another; and it necessarily follows that the act of the servant within the scope of his employment must be considered the act of the master, for which he is liable to the same extent as if he had performed the act in person."

In Blaker v. Phila. Electric Co., 60 Pa. Superior Ct. 56, 60, 63, KEPHART, J., said: "The expression 'in the course of his employment,' as used in the law of master and servant, means 'while engaged in the service of the master' and is not synonymous with "during the period covered by his employment": Slater v. Advance Thresher Co. (Minn.), 97 Minn. 305, 107 N. W. Repr. 133 ...... 'Not every deviation of the servant from the strict execution of his duty, nor every disregard of particular instructions will be such an interruption of the course of the master's business ......so that the servant may be said to be "on a frolic of his own," the master is no longer answerable for his servant's conduct: Pol. Torts, page 76. In cases of deviation the authorities are clearly to the effect that a mere deviation by the servant from the strict course of his duty, even for a purpose of his own, will not be such a deviation from the master's business as to relieve him from responsibility': Ritchie v. Waller, 63 Conn. 155."

If a wrongful act is committed in the course of the master's business the master is liable, notwithstanding such act may have been in direct violation of his instructions: McClung v. Dearborne, 134 Pa. 396; Schroeder v. Gulf Refining Co., 300 Pa. 397.

The question whether a servant was acting within the scope of his employment when he committed a negligent act is ordinarily a question of fact for the jury: Guinney v. Hand, 153 Pa. 404; Simmons v. Pa. R. R. Co., 199 Pa. 232.

In the case of Brennan v. Merchant & Co., 205 Pa. 258, Mr. Justice MESTREZAT quoted approvingly from the case of Rounds v. Delaware, etc., R. R. Co., 64 N. Y. 129, as follows: "It is in general sufficient to make the master responsible, that he gave to the servant an authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, and commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another."

In the instant case, notwitstanding the instructions alleged to have been given by defendant to her employee, Gibson, it was her duty to see that the same were carried out. Her failure to remonstrate with

Gibson, at the time he lit the cigarettes, made his act her own. She knew of the danger, because it was in violation of the instructions she had theretofore given. It was her duty not only to give instructions, but to see that they were obeyed.

The case was fairly submitted and the verdict is amply sustained by the evidence. The assignments of error are overruled and judgment affirmed.